# Delaware River Steamboat Co. *versus* Burlington and Bristol Steam Ferry Co.

1. The plaintiffs, a ferry company from Bristol to Burlington, across the Delaware river, had "slips" into which they ran their boats on the side of wharves in those towns belonging to the defendants, a steamboat company, running on the river from Philadelphia to the same towns. The defendants' boats when moored at their wharves prevented the plaintiff's boats from going in and out. *Held* that the defendants had the same right of navigation in front of the slips as in any part of the river, and to moor their boats in front of their wharf, but had no right wilfully to obstruct the plaintiffs in the use of their slips.

2. The declaration was that the plaintiffs owned the slips, &c., and the defendants wilfully and wrongfully obstructed their ways, the ferry and the slips, &c.; the plea was "Not guilty." This pleading raised the questions of the plaintiffs' right to the slip, and its free use as a place of landing, and the wilful and unlawful obstruction by defendants.

3. The questions did not concern the right of navigation to the public in general, and to the parties in particular, but an unlawful privation of the land used, where private rights of property existed.

February 14th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Certificate from Nisi Prius: Of January Term 1874, No. 60.

This was an action on the case, brought September 30th 1873, by the Burlington and Bristol Steam Ferry Company against the Delaware River Steamboat Company.

The declaration contained two counts. The issue tried was on the second count. It set out that the plaintiffs were owners, under charters from the states of Pennsylvania and New Jersey, of a ferry from a wharf and slip in the city of Burlington, New Jersey, and adjoining a wharf belonging to that city, to a wharf or slip in the borough of Bristol, in Pennsylvania; and for the purposes of the ferry the plaintiffs leased real estate at the slips in Burlington and Bristol, on which they erected wharves, piers, slips and the necessary appendages, and procured steamboats for the use of the ferry, and therefore had the right to free ingress and egress for their steamboats, agents, &c., into and from their wharves and slips, across the Delaware river from Bristol to Burlington and back; and averred that the defendants "wilfully and unlawfully intending to injure" the plaintiffs, &c., stopped up and

obstructed the ferry, wharves, slips, &c., so that the plaintiffs could not enjoy them, &c.

The defendants pleaded "Not guilty."

The case was tried March 20th 1874, before Mr. Justice WIL-LIAMS.

The evidence of the plaintiffs was, that they were the owners of the ferry steamboat "Ellwood Doran," running between Bristol and Burlington. The defendants owned the steamboat "John Warner," which ran from Philadelphia to Bristol, and across to Burlington and back again to Philadelphia. The defendants lease the wharves at which they land in Bristol and Burlington from the same persons from whom the plaintiffs lease their slips, which are alongside of the wharves. The defendant's pier at Bristol is from 40 to 60 feet, and at Burlington from 60 to 90 feet. The "Warner" is 226 feet long. When the "Warner" is lying at either wharf she extends beyond the slip, so that whilst she is there the plaintiffs' steamboat cannot get into the slip, nor, if in, get out. This prevents the "Doran" from making her regular trips, and her passengers miss the railroad trains with which they design to connect. The plaintiffs' boat makes the round trip about every forty or sixty minutes. They could get out and in by being "careful and cautious;" the detentions would be for several minutes. Passengers who had missed making connections said they would go by the "Warner," because the "Doran" could not get out. The captain of the "Warner" had been spoken to on the subject and requested to remove from the way of the "Doran." This detention occurred frequently. Plaintiffs suffered damage to the extent of $200 or $300 a year.

The defendants gave evidence that they had been running to and from those piers from the year 1852, except five years. About fifteen years ago they began to give plaintiffs the fares they received for carrying passengers across the river. They do not stay at the wharves longer than is necessary. They would have to give up the landing to avoid the detention of the plaintiffs' boat. If plaintiffs would run differently as to time, there would be no interference.

The defendants request the court to charge:—

1. That defendants are not liable for any injury arising to plaintiffs by reason of mooring to their own piers, unless there was a malicious exercise of the defendants' right.

2. If the plaintiffs could arrange their time so that the coming and going of the "Warner" would not conflict with the exercise of their right to come and go to their slips, it is an injury caused by their own neglect of duty for which defendants are not liable.

3. If the running of plaintiffs' boat was at such irregular intervals that defendants could make no provision to guard against their detention, then defendants are not liable.

The court declined to charge as requested, and instructed the

[Steamboat Co. v. Steam Ferry Co.]

jury that the defendants had the same right to navigate the river Delaware in front of the plaintiffs' slips that they had to navigate any other part of the river; but they had no right to moor their steamboat immediately in front of the plaintiffs' slips so as to obstruct the plaintiffs' use thereof, and prevent them from running their ferry boat into and out of the slips for the purpose of receiving and landing passengers; that the defendants had the undoubted right to tie up and moor their steamboat in front of their own piers, but they had no right to overlap the plaintiffs' slips with their steamboat and thereby prevent them from running their ferry boat into and out of the same; and if they did, such obstruction was unlawful, and plaintiffs might recover therefor.

The verdict was for the plaintiffs for $371.

The defendants took a writ of error.

They assigned for error the refusal of their points and the charge of the court.

*D. W. Sellers* (with whom was *H. C. Thompson*), for plaintiffs in error.—The right of navigation includes the right to moor. Delay to another exercising a like right if unavoidable is *damnum absque injuria*: Commonwealth v. Passmore, 1 S. & R. 217; Baker v. Lewis, 9 Casey 301.　There was no liability on the defendants unless there had been malice.

*G. R. Snowden* and *J. R. Snowden* (with whom was *A. H. Jones*), for defendants in error.—The owner of a wharf or slip must use it in such a manner as not to interfere with the use of the lands or wharves of contiguous proprietors: Bainbridge v. Sherlock, 7 Amer. Law Reg., N. S. 720; Irwin v. Dixon, 9 How. 33; Price v. Ruddiman, 10 Mich. 125.

Judgment was entered in the Supreme Court, March 4th 1876,

Per Curiam.—The declaration of the plaintiffs charged that the defendants wrongfully, wilfully and injuriously, stopped up and obstructed the ways, passages, wharves, and slips of the plaintiffs. This was the second count, and in it the means of obstruction was not stated. The plea was not guilty, and the issue of course was, whether the defendant did wilfully and wrongfully stop up and obstruct the passage way into the plaintiff's slips, the plaintiffs having averred the tenancy of the slip, and a right of ferriage across the river from and to their slip. It was only in the evidence that the means of obstruction appeared to be by the defendants permitting the steamboat "John A. Warner" to lie across the entrance of the plaintiffs' slip, whereby free egress and regress out of and into the slip were prevented. It is evident, therefore, that the primary questions in this issue were the plaintiffs' right to the slip as a place of land mooring, and to its free use as a place of

[Steamboat Co. *v.* Steam Ferry Co.]

landing, and the wilful and unlawful obstruction of this right. The question did not concern the general right of navigation as common to the public, and to these two parties in particular, but concerned an alleged unlawful privation of the land use, where private rights of property existed. Hence it is plain that the judge at Nisi Prius was by this issue called upon to instruct the jury only upon the primary questions raised by the issue, unless the defendants asked instructions upon any qualification which they deemed to arise out of the evidence before the court. In this view of the case the judge gave pertinent and proper instructions. He said, the defendants had the same right to navigate the river in front of the plaintiffs' slip as they had to navigate any other part of the river, and an undoubted right to tie up and moor their steamboat in front of their own piers. On the other hand, he said, the defendants had no right to moor their steamboat *immediately* in front of the plaintiffs' slip, so as to obstruct the plaintiffs' use thereof, and prevent them from running their ferry boat in and out thereof, and had no right to overlap the plaintiffs' slip, and thereby to prevent them from running their ferry boat in and out of the same, and if they did, such obstruction was unlawful. Now, clearly there was no error in this instruction. It stated the right of each party, and it was then a question of fact whether the defendants did thus wrongfully and wilfully obstruct the slip and the plaintiffs' use of it. Now if the defendants thought their obstruction was only partial, and so far only as their own right to the use of their own wharf would justify a mere temporary obstruction, and therefore would be a reasonable and not a wrongful and injurious interference with the plaintiffs' shore rights, it was their duty, if the evidence admitted of this view, to ask the proper instruction upon their right thus far to interfere with the plaintiffs' right of landing and mooring in their slip. The question was one of fact, dependent upon the evidence, and therefore to be decided by the jury. Now the defendants claimed no direction to the jury upon the question of their reasonable exercise of their own right, but demanded an instruction that the defendants' interference with the plaintiffs' right was justifiable, unless they *maliciously* exercised their right to the prejudice of the plaintiffs. This was properly refused by the court, and left the defendants resting upon the question of a wilful and wrongful obstruction of the plaintiffs' slip, so that the second and third prayers for instruction became immaterial, for if they were guilty of the wrongful act charged, there was no right to demand a re-arrangement of the plaintiffs' time of running their boat, or of the length of intervals between coming into and going out of the slip. The fact whether the exercise by the defendants of their riparian right and their right of navigation was reasonable towards their neighbors, the plaintiffs, was so clearly dependent on the evidence, and therefore a matter for the jury, and this rea-

sonable exercise not being made a distinct question, it is evident that there is nothing in the case which can make our decision infringe upon the right of navigation in the Delaware, and therefore the apprehended consequence cannot flow from the decision.

Judgment affirmed.